**369 P.2d 590**

Jeanne **JEWETT**, Arline Johanson, Idaho Children's Commission and W. D. Eberle, Arvil Millar, Mrs. H. Ferd Koch, Frances Sleep, William Roden, Emery Hedlund, Harold Lough, Marguerite Campbell, Karl Jeppesen, William C. Johnson, Jr., and Wilbur Waterman, Members of Said Commission, Plaintiffs,

**v.**

Joe R. **WILLIAMS**, Frank L. Benson, Arnold Williams, Robert E. Smylie and Board of Examiners of the State of Idaho, consisting of the above named defendants, Defendants.

**No. 9104.**

Supreme Court of Idaho.

Feb. 13, 1962.

Rehearing Denied Feb. 12, 1962.

W. D. Eberle, Boise, for appellants.

Frank L. Benson, Atty. Gen., Warren Felton, Asst. Atty. Gen., for respondents.

SMITH, Chief Justice.

This is an original proceeding for writ of mandate to compel defendants, Hon. Frank L. Benson, attorney general, Hon. Arnold Williams, secretary of state, and Hon. Robert E. Smylie, Governor, of the State of Idaho, as the board of examiners, to examine and approve for payment, and upon failure to compel Hon. Joe R. Williams, as state auditor, to issue warrants forthwith in payment of, certain claims drawn against Idaho Children's Commission appropriation, to-wit: for certain executive and secretarial salaries and items of expense incurred totaling $1501.

Alternative writ issued to which defendants made return and answer in the manner following:

Defendant Benson, as attorney general, on behalf of himself and Arnold Williams, made return alleging that they, and Lieutenant Governor W. E. Drevlow in the absence of Governor Smylie, acting as the board of examiners, by majority vote had

rejected the claims, Messrs. Benson and Williams voting to disapprove, and Mr. Drevlow voting to approve them; and that defendant Joe R. Williams, as state auditor, cannot draw and deliver warrants in payment of the claims because of their rejection by the board.

Defendant Joe R. Williams, as state auditor, made his separate return alleging "that the claims which are the subject matter of this action are in proper form, that they have been duly approved and certified by the Idaho Children's Commission, for payment of obligations incurred by said Commission under authority of Chapter 287, 1961 Session Laws of the State of Idaho;" that because of disapproval of the claims by a majority of the board of examiners, he tenders the warrants in payment of the claims to the clerk of this Court and prays for an order directing disposition of the warrants.

Defendant Smylie, Governor and a member of the board of examiners, filed a "Notice of Dismissal of Attorney," notifying the attorney general that he no longer was authorized to represent defendant Smylie in any respect in the cause; thereupon the Governor made his return alleging that the claims presented were in proper form, properly certified and properly chargeable to the appropriation provided by Chapter 287 of Idaho Sess.Laws 1961, creating Idaho Children's Commission; that the state auditor, although willing to draw warrants in payment of the claims, had been prevented from so doing by a majority of the board of examiners; and that he, the Governor, as a member of the board, had urged speedy approval and payment of the claims. He prays for an order directing the state auditor to deliver the warrants for payment of the claims, and that the Court issue an order restraining and enjoining the board of examiners from exceeding its jurisdiction relative to the claims.

This Court, upon hearing the matter on the issues raised by the petition and return, unanimously concluded that no valid reason existed for rejection by the board of examiners of the claims submitted, even though at a time prior to the drawing and filing of an opinion herein, inasmuch as the claims were properly presented on prescribed forms of vouchers, and properly certified, and shown to be a proper charge against the appropriation made to the Director of Administration, and that there were sufficient funds of the commission's appropriation in the state treasury for the payment thereof; that the matter is of great public importance, and that sufficient urgency exists for a determination of the issues involved by ordering payment forthwith of the claims. The Court thereupon issued a peremptory writ of mandate directing the state auditor to deliver the warrants to the payees therein named. Defendants Benson and Arnold Williams

thereafter petitioned for a rehearing and "redetermination of the issues herein," claiming error in certain regards within the purview of the issues herein decided, decisive also of such petition. The writ having issued, this decision is definitive of the power and duties of the board of examiners, and the reasons and authority for issuance of the writ.

Chapter 287 of Idaho Sess. Laws 1961, enacted by the Thirty-sixth session of the Legislature:—

Created Idaho Children's Commission to serve without pay, to be composed of eleven members appointed by the Governor, two to be members of the House of Representatives, and two of the Senate, but not more than two of these four to be members of any one political party; the remaining seven to be chosen each from a panel of four persons recommended by each of seven listed agencies, no such member to be employed by any agency listed;

Provided for employment by the commission of professional assistance to conduct a study and appraisal, and make findings and recommendations with regard to the laws, resources and facilities relating to delinquent, abused, neglected and handicapped children;

Provided for a report to the Governor by August 20, 1962, in order that appropriate budgetary recommenda-

tions may be made to the 37th session of the Legislature, copies of the report to be made available to the Legislature, and

Appropriated $20,000 from the General Fund to the Director of Administration to defray the commission's expenses in performing its prescribed duties, to be performed by September 30, 1962.

Defendants Benson and Arnold Williams contend that the commission is illegally constituted because in addition to the two Democratic party and the two Republican party members of the legislature, there is an additional member, Hon. W. D. Eberle, also a legislator.

The act does not prohibit more than four legislators, nor more than two members of any political party as members of the commission. The act provides for the initial four members of the commission to be members of the legislature, not more than two of whom shall be members of any one political party, but there are no such limitations as to the remaining seven members.

Mr. Eberle was appointed in accordance with the provisions of the act as a member selected from a panel of seven recommended by an agency listed in the act; it is not material that he happens to be a member of the legislature; nor was he shown to be employed by any agency listed in the act, thereby to preclude him from commission

membership. Defendants' contention in the premises is without merit.

▮ Defendants Benson and Arnold Williams contend that the act creating the commission is void in that it conflicts with Idaho Const. Art. II, § 1, providing for separation of the powers of state government, i. e., legislative, executive and judicial. Before disposing of this contention we must point out that we doubt the propriety of these defendants' questioning the constitutionality of the act creating the Children's Commission, since there appears to be no question as to form, certification or chargeability of the claims; for under the act the defendants are not personally or officially liable, nor authorized or directed to act in any way; nor have they shown injury to the state by enforcement of the act. The right of public officers to question a statute presupposes duties devolving upon the officers arising from the statute itself; here those duties under the act devolve upon officers who do not question the constitutionality of the act, i. e., the Governor, the Director of Administration, and the members of the commission, and not upon these defendants as members of the board of examiners, nor upon the board. Albrethsen v. State, 60 Idaho 715, 96 P.2d 437; State ex rel. Nielson v. City of Gooding, 75 Idaho 36, 266 P.2d 655; 16 C.J.S. Constitutional Law § 82, p. 251; 11 Am.Jur., Constitutional Law, § 117, p. 762; Anno. 30 A.L.R. 378; Anno. 129 A.L.R. 941.

▮ In approaching the contention that the act creating the commission conflicts with Idaho Const. Art. II, § 1, the doctrine of separation of powers is stated in such section to be that "no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others." It is the basic powers of sovereignty which must remain separate; not subsidiary activities which include the ascertainment of facts, investigation and consultation, the duty of reporting facts and making recommendations, for the purpose of carrying out those basic powers. This principle is well stated in 11 Cal.Jur.2d, Constitutional Law, § 105, p. 453, as follows:

"* * * But the chief qualification of the separation requirement has been by way of denying the exclusive nature of any governmental power or function other than the basic or ultimate power or authority to make laws, to expound and apply laws, and to execute laws, exercised respectively by the legislative, judicial, and executive departments."

Justice McKenna stated the applicable principle in Mutual Film Corp. v. Industrial Com., 236 U.S. 230, 35 S.Ct. 387, 392, 59 L.Ed. 552, 560, Ann.Cas.1916C, 296, 300:

"* * * Undoubtedly the legislature must declare the policy of the law

and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and to particularize, they would miss sufficiency both in provision and in execution."

81 C.J.S. States § 42, p. 960, succinctly states the rule:

"Members of the legislature creating a legislative council or interim committee by statute, may serve thereon, and membership thereof is not a 'civil office' within a constitutional provision prohibiting the appointment or election of a member of the legislature to a civil office created thereby during his term. Private citizens, as well as members of the legislature, may, in the absence of constitutional inhibition, be made members of committees."

The subsidiary powers of the Idaho Children's Commission are to conduct a study and appraisal, make findings and recommendations relative to certain subject matters involving children, and to report to the Governor in order that he may make appropriate budgetary decisions for submission to the next session of the legislature, the report also to be furnished the legislature. Clearly the commission is a fact-finding and fact evaluating body, to provide information to the legislature, but not exercising legislative functions. The act, Idaho Sess. Laws 1961, ch. 287, is not violative of the Constitution. Howard v. Missman, 81 Idaho 82, 337 P.2d 592; Penrod v. Crowley, 82 Idaho 511, 356 P.2d 73; State ex rel. Kendall v. Cole, 38 Nev. 215, 148 P. 551; Bailey v. State Board of Public Affairs, 194 Okl. 495, 153 P.2d 235; State ex rel. Hamblen v. Yelle, 29 Wash.2d 68, 185 P.2d 723; Swing v. Riley, 13 Cal.2d 513, 90 P.2d 313; Parker v. Riley, 18 Cal. 2d 83, 113 P.2d 873, 134 A.L.R. 1405; Woodward v. Pearson, 165 Or. 40, 103 P.2d 737; State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411, 53 A.L.R. 583; State ex rel. James v. Aronson, 132 Mont. 120, 314 P.2d 849; Rouse v. Johnson, 234 Ky. 473, 28 S.W.2d 745, 70 A.L.R. 1077; Mulnix v. Elliott, 62 Colo. 46, 156 P. 216; Louisville & N. R. Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229; J. W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624; 11 Am.Jur., Constitutional Law, § 183, p. 881; 49 Am.Jur., States, Etc., §§ 40–43, pp. 257 et seq.; 16 C.J.S. Constitutional Law § 105, p. 486; 81 C.J.S. States §§ 42–48, pp. 958 et seq.

Defendants Benson and Arnold Williams contend that the vouchers submitted for payment of the claims must be certified to

the effect that services or materials have been actually furnished; that payment has not been received, that the item or service was necessary in the public service and that the rate of payment has been fixed by lawful authority, citing I.C. §§ 67–2010, 67–2011 and 67–2012. Such sections outline the necessary provisions of a voucher form as constituting a guide for the board of examiners and the state auditor in determining whether a voucher is in proper order. However, as to the form of voucher, I.C. § 67–2005 provides:

"Voucher forms.—It is the duty of the state auditor, with the approval of the state board of examiners, to prescribe forms of vouchers on which all claims against the state must be submitted, and when such forms of vouchers have been prescribed no claim against the state shall be received and filed by the state auditor unless the same shall be presented on the proper form."

The board of examiners and the state auditor are required to prepare the voucher forms, and claims must be submitted on such prescribed forms. These claims were submitted on the prescribed forms of vouchers. The certificates on the various forms of vouchers in effect certify, in the case of payrolls, that the services charged for were necessary in the public service, the rate of pay shown has been fixed by proper authority, and the account is correct; and in cases of other services or expenses, that the items listed were furnished to the state agency, the amounts billed are proper charges, and that the account is in proper form and correct, that funds are in the state treasury or a balance in the appropriation, from which the same may be lawfully paid.

■ There is no contention regarding the form of the certificates appearing on the voucher forms; nor that the same were not prescribed by the state auditor and board of examiners. The position of such defendants, as a majority of the board of examiners, is untenable; for after having determined the form of voucher for submission of claims, and the claims involved herein having been so submitted, the board, as to such claims, cannot now require a different form, nor can it reject something which it required to be done in the premises, so long as statutory requirements have been complied with.

Such defendants contend that the certificate of appointment of plaintiff Jewett, as executive secretary of the Children's Commission, is defective and therefore invalid. Particularly, the defendants complain that the requirements of I.C. §§ 59–305, 59–306 and 59–307 were not met.

■ I.C. § 59–305 provides that the commissions of officers of the state, where no specific provision is made by law, "must be signed by the presiding officer of the

board or by the person making the appointment." If the executive secretary of such commission is an officer within the meaning of that section of the statute, then the certificate shown herein of W. D. Eberle, as chairman of the commission, is clearly sufficient to comply with that section of the statute.

I.C. § 59–306 provides that the appointment of every deputy clerk or other employee of the state, or whose salary or other compensation is payable out of a specific appropriation, shall be evidenced by a certificate executed by the appointing authority. I.C. § 59–307 forbids the state auditor from certifying a claim or issuing a warrant for the payment of any salary or compensation of an officer, clerk, or state employee, not elected by popular vote, unless the certificate prescribed by I.C. § 59–306 previously shall have been filed in his office.

■ The commission's executive secretary is "an employee" within the purview of I.C. §§ 59–306 and 59–307. The certificate executed by Don I. Walker, as Director of Administration, is sufficient and constitutes compliance with the provisions of the two sections of the statute.

Such defendants contend that the certificates on the forms of vouchers submitted were not properly signed by Mr. Walker. An inspection of the certificates show such contention to be without merit.

■ Nor can it be urged that the Director of Administration was unauthorized to certify the appointment of the commission's executive secretary. I.C. § 59–306 specifies that the certificate evidencing appointment be executed "by the appointing officer, board, commission or other designated authority." The Director of Administration is included in the phrase "other designated authority" in the instance here, inasmuch as the legislature made the appropriation of $20,000 to the Director.

■ The defendants, Benson and Arnold Williams, contend that members of the Children's Commission never filed oaths of office as required by I.C. § 59–401, thus assuming that the personnel of the commission are officers of the state and must take and file the prescribed oath. An "officer" of the state has been defined as one who:

"* * * is clothed with some part of the sovereignty of the state, to be exercised in the interest of the public, and required by law, * * *." Curtin v. State, 61 Cal.App. 377, 214 P. 1030, 1033.

See also Parker v. Riley, 18 Cal.2d 83, 113 P.2d 873, 134 A.L.R. 1405. The defendants submit no showing to indicate that the commission's members occupy positions as "officers" of the state.

On the other hand a reading of Idaho Sess. Laws 1961, ch. 287, shows that the

**104**

commission members perform only investigatory, recommendatory and fact-finding functions for the legislature,—subsidiary functions not within the concept of basic sovereign powers contemplated to be exercised by the legislature as a separate department of state government.

▆▆▆ Defendants Benson and Arnold Williams contend that should this Court issue mandate directing the board of examiners to approve the claims, such would constitute denial of the protection of United States Constitution, Art. IV, § 4, and Amendment 14, § 1. In their brief they assert such proposition with authorities, but did not supplement it by argument, as required by this Court's appellate rule 41. Gough v. Tribune-Journal Company, 75 Idaho 502, 507, 275 P.2d 663, 665; Coffin v. Cox, 78 Idaho 111, 117, 298 P.2d 742, 745; Zenier v. Spokane International Railroad Company, 78 Idaho 196, 205, 300 P.2d 494, 500; State v. Davidson, 78 Idaho 553, 571, 309 P.2d 211, 223; Wurm v. Pulice, 82 Idaho 359, 364, 353 P.2d 1071, 1074. We find no merit in their contention. As to United States Const. Art. IV, § 4, see Pacific States Telephone & Telegraph Co. v. Oregon, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377; Highland Farms Dairy v. Agnew, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835; State of Ohio ex rel. Davis v. Hildebrant, 241 U.S. 565, 36 S.Ct. 708, 60 L.Ed. 1172. As to U. S. Const. Amendment 14,

§ 1, see Independent School Dist. etc. v. Common School Dist. etc., 64 Idaho 303, 131 P.2d 786; Smith v. Indiana ex rel. Lewis, 191 U.S. 138, 24 S.Ct. 51, 48 L.Ed. 125; Columbus & G. R. Co. v. Miller, 283 U.S. 96, 51 S.Ct. 392, 75 L.Ed. 861; Thompson v. Kentucky, 209 U.S. 340, 28 S.Ct. 533, 52 L.Ed. 822.

▆▆▆ Defendants Benson and Arnold Williams raise the final issue whether mandate will lie to compel the board of examiners to allow a claim for any reason whatever as an act the performance of which the law (I.C. § 7-302) especially enjoins as a duty resulting from the office of the board; or as these defendants state such issue to be, whether mandate will lie to compel the board how to act by compelling it to allow a claim, they contending that this Court lacks jurisdiction to compel the board to act in a particular manner, asserting that so to do would violate the powers of the board conferred by Idaho Const. Art. IV, § 18; and that plaintiffs' only available remedy is to pursue the recommendatory judgment procedure of Idaho Const. Art. V, § 10.

Idaho Const. Art. IV, § 18, provides:

"The governor, secretary of state, and attorney-general shall constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such

other duties as may be prescribed by law. * * * And no claim against the state, except salaries and compensation of officers fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by said board."

Idaho Const. Art. V, § 10, reads:

"The Supreme Court shall have original jurisdiction to hear claims against the state, but its decision shall be merely recommendatory; no process in the nature of execution shall issue thereon; they shall be reported to the next session of the legislature for its action."

I.C. § 67–1008 requires all persons having claims against the state to exhibit them with supporting evidence "to the auditor, to be audited, settled and allowed by the board of examiners * * *." I.C. § 67–2018 makes it the duty of the "board of examiners to examine," and that it "may approve or disapprove" any claim or demand against the state, except salaries and compensation of officers fixed by law.

On all "accounts" submitted to the board of examiners for action, I.C. § 67–2014 requires the state auditor to certify as to the correctness of the form and amount and that there are funds in the state treasury for lawful payment of the same. I.C. § 67–2023 holds the auditor liable upon his official bond should he draw a warrant for any claim disapproved by the board of ex-

aminers if any loss therefrom accrues to the state.

In Pyke v. Steunenberg, 5 Idaho 614, 51 P. 614, the doctrine of absolute discretion and power in the board of examiners was recognized. That decision, by a majority of two of a then three member court, was based upon a *supposition* that the framers of the constitution intended to establish such authority in that board. We overruled that doctrine in Rich v. Williams, 81 Idaho 311, 341 P.2d 432; Padgett v. Williams, 82 Idaho·28, 348 P.2d 944, and Padgett v. Williams, 82 Idaho 114, 350 P.2d 353, in which regard, hereinafter, we shall treat more in detail.

The two defendants urge reexamination of the Rich and Padgett decisions to the end that they be overruled, thereby once again to recognize absolute discretion and power in the board of examiners to approve or disapprove all such claims (not within the exceptions) against the state, though there be no question as regards form, certification and chargeability.

In the Rich and Padgett cases the board of examiners was not, nor was any member a party before the Court. Here, the board and its members are parties. And although by mandate we commanded defendant state auditor to deliver the warrants in payment of the claims involved, as the urgency of the situation required such immediate action, this opinion to follow later; neverthe-

less in the light of public importance of the question, and invocation of the original jurisdiction of this Court encompassing the issue presented, Boughton v. Price, 70 Idaho 243, 215 P.2d 286; Rich v. Williams, 81 Idaho 311, 341 P.2d 432; Padgett v. Williams, 82 Idaho 28, 348 P.2d 944; and since additional claims will be presented for payment from funds appropriated to carry out the legislative purposes and policy of the act creating the Children's Commission, we again, perhaps more explicitly and definitively than heretofore, decide, the issue.

We are cognizant of the warning contained in Pyke v. Steunenberg, 5 Idaho 614, 51 P. 614, of possible apprehension of encroachment by the judiciary upon the coordinate branches of the government; but we repeat the admonition of that case, that this Court must observe its imperative duty fearlessly to interpret the law as made, and never permit, if it be in our power to prevent, any infraction of the Constitution which we are sworn to uphold, support and maintain.

We are also cognizant of the principle that a court ought not to change its interpretation of the law after long lapse of time, inasmuch as such a change may properly be performed by the law making power, In re Speer, 53 Idaho 293, 23 P.2d 239, 88 A.L.R. 1086. But Scott v. Gossett, 66 Idaho 329, 158 P.2d 804, recognizes the exception to such principle that altering judicial construction by subsequent decision may be exercised where grave reason exists.

Defendants Benson and Arnold Williams in this remaining issue contend, inasmuch as the board of examiners rejected the claims involved herein, though there appears no valid objection as to their form, certification and chargeability against the legislative appropriation made for their payment, that plaintiffs' only available remedy is to pursue the recommendatory judgment procedure of Idaho Const. Art. V, § 10. With such contention we cannot agree; for again such erroneous concept originated with Pyke v. Steunenberg, 5 Idaho 614, 51 P. 614, wherein the Court observed that under Idaho Const. Art. V, § 10, the Supreme Court's jurisdiction to hear claims against the state is not limited to claims for payment of which no appropriation has been made, but embraces all claims not included within the classes excepted.

Mere cursory examination seemingly discloses conflict between Art. IV, § 18 and Art. V, § 10 of the Constitution. Art. IV, § 18 provides that no claims against the state (not included within the exceptions), shall be passed upon by the legislature without having been considered and acted upon by the board of examiners, and Art. V, § 10 provides original jurisdiction in the Supreme Court to hear claims against the state, its recommendatory decision to be

reported to the next session of the legislature for action.

The apparent conflict, causative of the erroneous view expressed by the majority of the court in Pyke v. Steunenberg, supra, is harmonized by an examination of the debates in Idaho Constitutional Convention, Vol. II, Proceedings and Debates, pp. 1427 and 1428. Therein it was pointed out that no conflict exists between the two sections; that § 18 (Art. IV) clothes the named officers as the board of examiners *with power to examine* claims against the state, and that § 11 (now § 10, Art. V) clothes the Supreme Court with original jurisdiction to hear claims against the state, its decision to be recommendatory to the legislature; whereas in a case where the board allows such a claim "there is no necessity to go into court;" but if the board rejects a claim then the court may assume jurisdiction to determine the merits of the claim.

Obviously, in a case where the legislature has made an appropriation for the payment of a claim there would be no necessity for a subsequent recommendation to the legislature for payment of the same claim. The legislature, by making the appropriation, makes provision for and authorizes payment of the claim, if incurred by due authority, and presented in proper form for payment from unexpended funds appropriated for its payment. Otherwise the expressed will and policy of the legislature would be rendered nugatory. Padgett v. Williams, 82 Idaho 114, 350 P.2d 353. In that case this Court also stated:

"The absurdity of the attorney general's contention, and of any recognition by this court of the authority which he claims for the state board of examiners, becomes apparent when followed to its logical conclusion. Assume that plaintiff's claim were recommended and reported to the next session of the legislature and again approved by it. If the board of examiners has the power now claimed for it by the attorney general, it could again deny plaintiff's claim, and so on ad infinitum. Or, if it be considered that the second approval by the legislature would be conclusive on the board, the result still would be an absurd impasse in state government. All functions of all the agencies of government could be carried on from one session of the legislature to the next only by the consent and at the sufferance of the board of examiners. In short, the attorney general's contention is reduced to the absurdity of an attempt to confer upon the state board of examiners power to overrule the will of the legislature, and to render nugatory any legislative act providing for the carrying on of any function of the state government which requires the expenditure of money."

Epperson v. Howell, 28 Idaho 338, 154 P. 621, recognized the theories which we advance in this opinion in this language:

"An appropriation * * * is authority from the Legislature expressly given in legal form, to the proper officers, to pay from the public moneys a specified sum and no more, for a specified purpose and no other."

for a legislative appropriation confers due authority to the agency to which the appropriation is made, for disbursement of the same for the purpose specified in the enactment. In Epperson v. Howell, this Court further pointed out that in the case of a claim incurred in any instance without money having been appropriated for its payment, absence of appropriation would preclude its payment.

■ Defendants' remaining contention that the board of examiners is given absolute discretion to approve or disapprove all claims (not within the exceptions) against the state and that mandate will not lie to compel the board to approve a claim, is an erroneous concept, which we discarded in the Rich and Padgett cases and again discard herein. Consideration of the basis upon which such erroneous concept developed, advances to the forefront the soundness of the reasoning of Chief Justice Sullivan in his learned dissenting opinion in Pyke v. Steunenberg, 5 Idaho 614, 51 P. 614, wherein he maintained that absolute discretion over claims against the state was not vested in the board of examiners. We adhere to the wisdom of his sage reasoning. He clearly discerned an excessively dangerous modus operandi of encroachment, even to the point of destruction of our three-departmental form of government in the recognition of such absolute discretion in the board of examiners. Chief Justice Sullivan's views are so aptly directed against such concept of absolute discretion and power, again advanced in the case at bar, that we repeat his analysis of the issue presented and his correct expression of the law. Speaking on the issue in Pyke v. Steunenberg, Justice Sullivan said:

"* * * It is contended by the attorney general that said board is given absolute discretion over all claims against the state. They may audit or refuse to audit, allow or disallow, all claims against the state * * *, and, in case of disallowance, the claimant's only remedy is an application to some future legislature; and, in support of that view, he states the general rule that *mandamus* will not issue to control the discretionary power of the board. He attempts to surround said board with a halo of discretion that never was intended."

He then pointed out that the board of examiners has no discretion in the exercise

of its duty to pass upon claims. But as to its duty to allow claims, he stated:

"It is given a sound, legal, reasonable discretion in the allowance of claims. It is not a discretion that can be exercised in a capricious, arbitrary, oppressive, or wanton manner. * * They [board of examiners] have seen fit to rest their case * * * upon the broad ground that the discretion given them is absolute, above and beyond the criticism or correction of any tribunal. In Amperse v. City of Kalamazoo, 59 Mich. 78, 26 N.W. 222, 409, the court says: 'The respondents in this case have seen fit to rest their cause upon the broad ground that their action is above and beyond criticism of any other tribunal. Their answer assumes that they are sole arbiters of the relator's rights. * * * In such case we can only assume that they acted arbitrarily and without reason.'"

Chief Justice Sullivan then reiterated well defined exceptions to the general rule that mandate will not lie to compel the board of examiners how to act. He pointed out that misapprehension of the law, as a basis of denial of a claim, is not exercise of discretion, citing Merrill on Mandamus, § 38; nor is there ground for exercise of discretion in a case where the claim is proper, or the supplies furnished, accepted and received, and the claim has been audited and allowed by the receiving state agency, where no question has arisen as to the legality of the transaction, and money has been duly appropriated for payment; that in such a case the law enjoins payment. Said Justice Sullivan:

"The absolute discretion invoked in favor of the board [of examiners] is repudiation, pure and simple. It is not sufficient to say that the petitioner has a remedy by resorting to some future legislature. That is not the plain, speedy, and adequate remedy, in the ordinary course of law, * * *. It is more a political remedy than a plain, speedy, and adequate remedy, in the ordinary course of law [Citations]. It was not intended that the payment for supplies furnished * * the payment for which an appropriation had been made by law, should, by the arbitrary action of said board, be relegated to the uncertain action of future legislatures. Such arbitrary discretion would place the state at great disadvantage in making contracts, and would prevent business men from entering into contracts with the state, unless they knew the board would allow their claims. The constitution and law confer upon said board a sound legal discretion in passing upon claims. Its plain duty, under the law, is to audit and allow all legal

claims against the state, not to reject them. The discretion given them has been exercised, and, under the exercise of that discretion, they admit the claims are legal and just * * * *their duty thereafter is only ministerial.* They must allow them. What is the plain duty of said board, after they have admitted that a claim is legal and just? Is it to arbitrarily disallow it? I think not. Discretion, carried to that extent, is characterized by the court of appeals of Colorado, in Board of Com'rs of Grand Co. v. People, [8 Colo.App. 43,] 46 Pac. 109, as 'another name for the gaunt specter of repudiation.' " (Emphasis supplied.)

Justice Sullivan's dissertation in Pyke v. Steunenberg, concerning the discretion of the board of examiners to be exercised in passing upon claims and its ministerial duty to audit and allow them in the exercise of discretion, clearly refers to the first sentence of Idaho Const. Art. IV, § 18, to which we again invite attention:

"The governor, secretary of state, and attorney-general shall constitute a board of examiners, *with power to examine* all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law." (Emphasis supplied.)

"Audit" as used by Justice Sullivan, clearly encompasses "examine." "Audit" is defined in Webster's New Int'l Dictionary, 2nd Ed. (1959): "formal examination and verification of accounts, vouchers and other records * * * the result of such an examination; * * * to examine and verify as an account; * * * to make an audit, or official examination of account." See also Black's Law Dictionary, 4th Ed., p. 166. "Examine" is defined in Webster, supra: "to test by an appropriate method; to inspect carefully * * *; to investigate; scrutinize." The legislature, however, in exercise of its authority to prescribe "such other duties" under this section of the Constitution, has seen fit to prescribe the duty of examination of claims by the board of examiners. I.C. §§ 67–1008 and 67–2018. Its authority so exercised is within the scope of, and in harmony with such quoted provision of the Constitution.

I.C. § 67–2018, insofar as it provides that the board of examiners may disapprove any claim or demand against the state, cannot be interpreted as vesting absolute discretion in the board of examiners to approve or disapprove any claim or demand against the state as these defendants contend; for so to do would render such provision of the statute unconstitutional as an attempt to delegate legislative power to the board, violative of the basic sovereign power of the legislature to make laws

with accompanying express or implicit legislative policy which the board could annul, in the case of any enactment carrying an appropriation, by denial of claims for the payment of which the legislature had made such appropriation.

In discarding the fallacious doctrine of absolute discretion and power as vested in the board of examiners over claims against the state, this Court in Rich v. Williams, 81 Idaho 311, 325–326, 341 P.2d 432, 440–441, after recognizing the board's authority to examine the claims, said:

"This does not mean, however, that the Board of Examiners is vested with authority by either the Constitution or statute to override the expressed will of the Legislature. By our Constitution the power to make and determine policy for the government of the State is vested in the Legislature, (Citations).

"The Legislature having considered and determined the necessity for the building authorized by Chapter 83, and that its construction is in the interest of the people of the State, and having by the enactment of said Chapter approved the project by appropriating funds for its construction, *the Board of Examiners is without power to veto the act, or reverse the policy thus declared, by refusing to approve valid claims properly presented, in execution thereof.* As to such claims, *the authority of the Board of Examiners is limited* to determining that the claims are in proper form, properly certified to the State Auditor by the Department of Highways, and chargeable against the appropriation." (Emphasis supplied.)

In Padgett v. Williams, 82 Idaho 28, 34, 348 P.2d 944, 947, this Court reaffirmed such ruling of the Rich case, and in Padgett v. Williams, 82 Idaho 114, 350 P.2d 353, once more reaffirming it, stated:

"The language employed in Rich v. Williams, 81 Idaho 311, 341 P.2d 432, as quoted in our prior opinion herein, is construed to mean that * * * the authority of the board of examiners is to determine whether the claim is in proper form, properly certified to the state auditor, whether an appropriation has been made by the legislature for the payment thereof, and whether there are funds remaining in the appropriation for such payment.

*     *     *     *     *     *

" * * * The application of Const. Art. 4, § 18, and Art. 5, § 10, which we have made in Rich v. Williams and herein is in harmony with the purpose of those provisions as shown by the debates in the constitutional convention, II Idaho Constitutional Con-

vention, Proceedings and Debates, 1427 and 1428. *The delegates were concerned with the preservation of the power of the legislature to finally determine all claims against the state. They did not consider setting up a tribunal with power to deny claims already authorized by the legislature.*" (Emphasis supplied.)

Continuing, this Court then reiterated its denial of the attorney general's contention of absolute discretion and power as vested in the board of examiners over all claims, not within the excepted classes, against the state, in the following language:

"True, the board of examiners is a constitutional tribunal, with the constitutionally vested power to examine all claims against the state. But, nevertheless, it is also only an arm of the executive department of the state government. The authority now claimed would make it the supreme authority in state government, with power to control or nullify the acts and functions of all three of the major departments of the state government —executive, legislative, and judicial. Such power, the constitution does not confer upon it. The power to examine all claims against the state does not extend that far. Const. Art. 4, § 18, Art. 2, § 1.

\* \* \* \* \* \*

"We have found no constitutional objection to the act of the legislature in providing the board of highway directors with authority to employ counsel of its choice, yet two of the members of the board of examiners are claiming the power to overrule the legislature and nullify its act, on the ground that the wisdom and policy of the legislature does not accord with the views of the attorney general.

"The ground upon which the board denied plaintiff's claim, not being one upon which it is authorized to base such denial, its action is without force or effect."

This Court then ruled (82 Idaho 117, 350 P.2d 355), after stating that we had reviewed the decisions of this Court contrary to the holding of the Rich and Padgett cases, overruling the concept of such absolute discretion over the claims, vested in the board of examiners, as follows:

" \* \* \* In so far as any of those decisions may be in conflict with the decision in Rich v. Williams or the decision herein, the same are hereby overruled."

Those decisions or portions thereof, by specific ruling or by way of dictum, em-

bracing such concept of absolute discretion vested in the board of examiners, and thus overruled, are listed below.[1] If there be other decisions, or portions thereof in conflict herewith, though not listed, they likewise are overruled. See also: State ex rel. Schneider v. Cunningham, 39 Mont. 165, 101 P. 962; State ex rel. Jones v. Erickson, 75 Mont. 429, 244 P. 287; Dufton v. Daniels, 190 Cal. 577, 213 P. 949; Board of Com'rs of Carter County v. Dorough, 177 Okl. 346, 59 P.2d 273; Bailey on Habeas Corpus and Special Remedies, § 230, p. 950; Anno. 5 A.L.R. 572; 34 Am.Jur., Mandamus, § 170, p. 944; 55 C.J.S. Mandamus § 145, p. 255, which uphold our views herein expressed.

We pointed out in the Rich and Padgett decisions, and again reiterate here, that the concept, as advocated by defendants Benson and Arnold Williams, would recognize an absolute discretion in the board of examiners to deny for any reason, any claim (if not for salary or compensation fixed by law), though the act be constitutional, and the legislative policy be declared by an appropriation made. Clearly the recognition of such doctrine prior to the Rich and Padgett decisions was so entirely erroneous and wrong in principle that its further recognition could countenance consequences violative of funda-mental principles of our constituted republican form of government and particularly of the constitutional concept of separation of the powers of our state government. For such would permit an executive board to render nugatory any legislative enactment carrying appropriations, thereby to encroach upon the powers exercised by the legislative branch of the government. Such concept of absolute discretion and power cannot be tolerated. In the Rich and Padgett cases it was illustrated, and herein it is again shown to be imperative for the welfare and preservation of our governmental structure, particularly of separation of the powers of state government, that such erroneous concept be stricken down and held for naught.

We have held in the Rich and Padgett cases and herein again rule that when there is no question as to form, certification and chargeability of a claim against an appropriation, then it becomes the duty of the board of examiners to examine and approve such a claim for payment. The board must perform its ministerial duty in the premises. For to act otherwise would be in an arbitrary, capricious, oppressive and wanton manner far above and beyond the power vested in such board by our Constitution. It therefore follows that in such a case mandamus will lie to com-

---

1. Pyke v. Steunenberg, 5 Idaho 614, 51 P. 614; Bragaw v. Gooding, 14 Idaho 288, 94 P. 438; Curtis v. Moore, 38 Idaho 193, 221 P. 133; Gem Irrigation District v. Gallett, 43 Idaho 519, 253 P. 128.

**114**

pel the board of examiners to perform its ministerial duty in the premises.

In summary:

█ The board of examiners, in observance of its duty to examine claims against the state, other than for salaries and compensation fixed by law, must determine whether the claim is in proper form, properly certified by the state auditor, and within the scope of the enactment providing the appropriation and payable therefrom. I.C. § 67–2014; Rich v. Williams, 81 Idaho 311, 341 P.2d 432; Padgett v. Williams, 82 Idaho 114, 350 P.2d 353.

█ If the amount of such a claim has been fixed or settled by lawful contract, or by authority of the department head of a state agency, or other person authorized by law to fix the same, then the board exercises only a ministerial function in examining and approving the claim for payment after having determined that the claim is proper as to form, certification and chargeability against the appropriation.

█ If the legislature has not previously appropriated moneys for payment of the item for which a claim has been submitted, then the board of examiners may recommend or refuse to recommend that it be submitted to the succeeding session of the legislature for payment.

In the light of our rulings herein the board of examiners must and hereby is directed to examine and approve for payment claims of Idaho Children's Commission upon determining that the claims are proper as to form, certification and chargeability against the appropriation.

Petition for rehearing denied.

TAYLOR, McQUADE and McFADDEN, JJ., and WARD, D. J., concur.